**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

```
_____
                              :
JIHAD ABDULLAH SHARRIEFF,     :
                              :
           Petitioner,        :        Civil No. 05-4525 (JLL)
                              :
       v.                     :
                              :          O P I N I O N
RONALD H. CATHEL, et al.,     :
                              :
           Respondents.       :
_____:
```

**APPEARANCES:**

Jihad Abdullah Sharrieff, <u>Pro</u> <u>Se</u>
New Jersey State Prison
#426150/802216B
P.O. Box 861
Trenton, NJ 08625

Kenneth P. Ply
Assistant Prosecutor
Essex County Prosecutor's Office
50 West Market Street
Newark, NJ 07102
Attorney for Respondents

**LINARES, District Judge**

Petitioner, Jihad Abdullah Sharrieff, filed the within petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254. Respondents filed a Response to the Petition on August 7, 2006. Petitioner filed a Traverse on November 14, 2006. The Court has considered all submissions. For the reasons set forth below, the Petition will be denied.

**BACKGROUND**

1.   <u>Factual Background</u>

The facts of this case were recounted below and this Court, affording the state court's factual determinations the appropriate deference, <u>see</u> 28 U.S.C. § 2254(e)(1), will simply reproduce the Superior Court of New Jersey, Appellate Division's ("Appellate Division") factual recitation:

> Two robberies and a homicide occurred in Newark within a relatively short time of each other in the early morning of September 11, 1999, in what the state charged was a crime spree by defendant.
>
> This appeal arises from defendant's trial on the three indictments resulting from these crimes, one for murder and two for robbery, and from his ensuing convictions and sentence. He was first tried in a joint trial on the murder indictment and two robbery indictments. At the first trial, he was found guilty in one robbery case, and there was a hung jury on the other robbery case and on the homicide case. He was tried again on those two open cases. This time the jury convicted him in the murder case and acquitted him of the charges relating to the second robbery.
>
> More specifically, the first crime, a robbery, led to Indictment No. 00-6-1713. It occurred at about 1:00 a.m. on the morning of September 11, when two men wearing hooded sweatshirts and carrying guns burst into an apartment building in Newark and ran up the stairs. Although there were differences in the testimony of the witnesses, there was evidence generally as follows. Several persons were on the second floor near the staircase at the time. One of the robbers, named Kowan Bowers, chased a man who fled from the scene and the other assailant remained and waved his gun at Dorotheasha Kimble and Darvell Anderson and demanded money. Kimble testified that he took $100 from her bra. Anderson recognized the two men. He knew one of them, Bowers, as "Dollar" and the other man as "Jihad," who was later identified as defendant. After defendant was identified and arrested about a month later he gave

2

a statement in which he admitted his participation in this robbery and the other crimes that are the subject of this appeal.

The second robbery occurred approximately an hour later and led to Indictment No. 00-6-1708. At about 2:20 a.m. on September 11, Darryl Yancey and two other men were walking home from a party and a man suddenly ran up to them and told them to "run" or empty their pockets. He pointed a gun at Yancey and shot him in the arm. Yancey ran for help and a Newark Police Officer, Kareena Hannibal, arrived at the scene. Yancey described his assailant to Hannibal, but when he was shown a photo array the next day, rather than selecting defendant he instead picked out the picture of another individual, namely Bowers. Yancey did, however, identify a gun retrieved by the police during the investigation as the one used to shoot him. Fingerprints taken from the gun matched defendant's, and the defendant ultimately gave a statement in which he indicated that he was involved in that robbery and shot one of the victims.

The third crime led to Indictment No. 00-4-1149, pertaining to an incident that occurred at about 3:00 a.m. on September 11 on a sidewalk outside 514 Avon Avenue in Newark. There, defendant allegedly fatally shot a man named Anthony Ralph in the abdomen and then in the head. A witness, Omar Rivera, gave a description of the gun used in the shooting which matched the description of the gun used in the other two incidents. As soon as the police arrived defendant was seen running away from the area.

Defendant was arrested on October 11 and gave a statement to the police admitting that he had robbed Kimble, Anderson, and Yancey, and had killed Anthony Ralph.

(State v. Sharrif, A-2956-01T4 (Apr. 8, 2004), pp. 1-4;

Respondents' Exhibit "Re" B)(footnote omitted).[1]

---

[1]  The Court notes that Petitioner's name has been spelled in a variety of ways throughout his criminal cases and appeals, including, Sharrieff, Sharrif, Sharrief, and Sharrieed.

2.  <u>Procedural History</u>

As noted by the Appellate Division, three indictments were returned against defendant:

(1)  Regarding the first robbery against Kimble and Anderson, on June 23, 2000, an Essex County Grand Jury indicted Petitioner and co-defendant Bowers on four counts, including: first-degree robbery, contrary to <u>N.J.S.A.</u> 2C:15-1 (counts one and two); third-degree unlawful possession of a firearm, contrary to <u>N.J.S.A.</u> 2C:39-5b (count three); and second-degree possession of a firearm for an unlawful purpose, contrary to <u>N.J.S.A.</u> 2C:39-4a (count four).

(2)  Regarding the second robbery against Yancey, on June 26, 2000, an Essex County Grand Jury indicted Petitioner and co-defendant Bowers on five counts, including: second-degree conspiracy to commit robbery and aggravated assault, contrary to <u>N.J.S.A.</u> 2C:5-2, 2C:15-1, and 2C:12-1b(1) (count one); first-degree robbery, contrary to <u>N.J.S.A.</u> 2C:15-1 (count two); second-degree aggravated assault, contrary to <u>N.J.S.A.</u> 2C:12-1b(1) (count three); third-degree unlawful possession of a firearm, contrary to <u>N.J.S.A.</u> 2C:39-5b (count four); and second-degree possession of a firearm for an unlawful purpose, contrary to <u>N.J.S.A.</u> 2C:39-4a (count five).

4

(3)  With regard to the homicide of Anthony Ralph, on April 28, 2000, an Essex County Grand Jury indicted Petitioner (alone) on three counts: purposeful or knowing murder, contrary to N.J.S.A. 2C:11-3a(1) or 2C:11-3a(2) (count one); third-degree unlawful possession of a firearm, contrary to N.J.S.A. 2C:39-5b (count two); and second-degree possession of a firearm for an unlawful purpose, contrary to N.J.S.A. 2C:39-4a (count three).

Pretrial motions included a motion by Petitioner to suppress his statement to the police, which was denied; a motion by the State to consolidate the indictments for trial, which was granted; and a request by Petitioner for a full Wade hearing, which was denied.

Petitioner was tried before a jury from June 20 through June 29, 2001.  On June 26, 2001, the trial judge granted the State's motion to dismiss count one of the indictment for the second robbery, which charged Petitioner with conspiracy.

On June 29, 2001, the jury found Petitioner guilty of all counts of the first indictment for the robberies of Kimble and Anderson.  On July 16, 2001, because the jury was unable to reach a verdict as to the remaining indictments, the trial court granted Petitioner's motion for a mistrial as to these two indictments.

Petitioner was retried on the remaining two indictments in August 2001.  Prior to trial, Petitioner moved to exclude

5

evidence of the robberies of which Petitioner had been convicted during the first trial.  The motion was denied.  The trial on the remaining two indictments occurred from August 8 through August 14, 2001.  The jury acquitted Petitioner of all counts of the second indictment concerning the robbery of Yancey; however, the jury found Petitioner guilty of all counts of the indictment concerning the murder of Anthony Ralph.

On October 12, 2001, the trial court imposed an aggregate sentence of life plus forty years, with sixty-four years of parole ineligibility.

Petitioner appealed his convictions and sentence to the Appellate Division.  On April 8, 2004, the Appellate Division affirmed the convictions and remanded the matter to correct a sentencing error concerning the merger of certain offenses. Petitioner petitioned the New Jersey Supreme Court for certification, which was denied on February 16, 2005.

The instant petition was filed on September 16, 2005.  On March 3, 2006, Petitioner was advised of his rights pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000).  On August 7, 2006, Respondents filed an Answer and the state court record.  On November 14, 2006, Petitioner filed a Traverse.

## DISCUSSION

**A.    Petitioner's Claims.**

Petitioner asserts the following arguments for habeas relief:

1. The trial court's instruction to the jury that Kowan Bowers was not in the case and should not be considered deprived Petitioner of his defense, and of due process and a fair trial.

2. The trial court deprived Petitioner of his defense by excluding expert testimony concerning Petitioner's low intellectual functioning and coping deficit disorder as factors bearing on the credibility of Petitioner's statement.

3. Petitioner's Sixth Amendment right to confrontation was violated when a state's witness testified about inadmissible hearsay.

4. The trial court erred in finding that Petitioner voluntarily waived his rights and that his statement was voluntary.

5. The trial judge violated Petitioner's due process rights by admitting evidence of a pretrial photographic identification where the state failed to present evidence of the circumstances of the procedure and the court denied Petitioner's request for a full <u>Wade</u> hearing.

6. Petitioner's sentence violates <u>Blakely v. Washington</u>.

<u>See</u> Petition for Writ of Habeas Corpus, ¶ 12 and attachment.

Petitioner has raised the instant claims before the New Jersey state courts.

**B.    Standards Governing Petitioner's Claims.**

Section 2254 of Title 28, United States Code, provides that the district court "shall entertain an application for a writ of

7

habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

Under 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), federal courts in habeas corpus cases must give considerable deference to determinations of the state trial and appellate courts.  See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied 534 U.S. 919 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996)(citing Parke v. Raley, 506 U.S. 20, 36 (1992)).

Section 2254(d) sets the standard for granting or denying a writ of habeas corpus.  The statute reads as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362, 412-13 (2000), the Supreme Court explained the application of § 2254(d)(1).  The

8

Court analyzed subsection 1 as two clauses:  the "contrary to" clause and the "unreasonable application" clause.  The Court held that under the "contrary to" clause, "a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  Id. A federal court may grant the writ under the "unreasonable application" clause, if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id. at 413.  Habeas relief may not be granted under the "unreasonable application" clause unless a state court's application of clearly established federal law was objectively unreasonable; an incorrect application of federal law alone is not sufficient to warrant habeas relief.  See id. at 411; see also Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000), cert. denied, 532 U.S. 980 (2001); Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 891 (3d Cir.), cert. denied, Matteo v. Brennan, 528 U.S. 824 (1999).  Thus, the federal court must decide whether the state court's application of federal law, when evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court

precedent.  See Werts, 228 F.3d at 197; see also Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005).

With regard to 28 U.S.C. § 2254(d)(2), a federal court must confine its examination to evidence in the record.  See Abu-Jamal v. Horn, 2001 WL 1609690, at *12 (E.D. Pa. December 18, 2001). In addition, the state court record should be reviewed to assess the reasonableness of the state court's factual determinations. See id.  Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court."  Id.; see also 28 U.S.C. § 2254(e)(1).  The Court of Appeals for the Third Circuit has ruled that this presumption of correctness can be overcome only by clear and convincing evidence.  See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir. 2001)(citing 28 U.S.C. § 2254(e)(1)).  "A finding that is well-supported and subject to the presumption of correctness is not unreasonable."  Abu-Jamal, 2001 WL 1609690 at *12 (citing Duncan, 156 F.3d at 198).

Furthermore, federal habeas courts ordinarily refrain from revisiting credibility determinations as "it would be wholly inappropriate for a federal court to repastinate soil already thoroughly plowed and delve into the veracity of the witnesses on habeas review."  Sanna v. Dipaolo, 265 F.3d 1, 10 (1st Cir. 2001).  A habeas petitioner therefore "must clear a high hurdle before a federal court will set aside any of the state court's

factual findings." <u>Mastracchio v. Vose</u>, 274 F.3d 590, 597-98 (1st Cir. 2001).

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  <u>See Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976); <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972).  A <u>pro se</u> habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  <u>See Royce v. Hahn</u>, 151 F.3d 116, 118 (3d Cir. 1998); <u>Lewis v. Attorney General</u>, 878 F.2d 714, 721-22 (3d Cir. 1989); <u>United States v. Brierley</u>, 414 F.2d 552, 555 (3d Cir. 1969), <u>cert. denied</u>, 399 U.S. 912 (1970).

## C.   <u>Petitioner's Right to Present Defense (Ground One).</u>

Petitioner argues that the trial court's instruction to the jury to not consider his co-defendant Kowan Bowers in Petitioner's case violated his right to due process, because it deprived him of his defense.  Petitioner states that his defense was that he did not commit the crimes, particularly the homicide, but rather Bowers did.  Petitioner supported his defense with the evidence that Yancey had picked out Bowers' picture as the person who robbed him about fifteen to twenty minutes prior to the homicide occurring.

In particular, Petitioner objects to the following statement which was made by the trial court after opening statements:

> In this particular case Kowan Bowers who is
> indicted is not on trial in this particular case.

11

Therefore, the jury is not to speculate as to where or
what is going on with Kowan Bowers's case.  He is not
in this case.  So there is no consideration for the
jury to speculate about his presence in this case.  He
is not in this case here.  This case is State versus
Abdullah Sharrif.  So the jury is not to speculate on
that area.

(Re 20T, Transcript, August 8, 2001, at pp. 63-64).

The Appellate Division considered Petitioner's argument on

direct appeal.  The Appellate Division stated, in relevant part:

. . . In her opening statement during the first trial,
defendant's counsel stated that the evidence would
demonstrate that Bowers, not defendant, killed Ralph,
based on Yancey's identification of Bowers as the man
who shot him during the aborted robbery shortly before
Ralph was shot.  Defense counsel continued by stating
that since the police never found Bowers they decided
to pursue defendant for Ralph's murder.

The prosecutor objected and the court stated that
it would instruct the jury "not to speculate as to
where Kowan Bowers is.  There is no reason for this
jury to speculate where he is."

We reject defendant's argument because he has not
established that he was deprived of the ability
effectively to defend himself by arguing and presenting
evidence that a third-party committed the crimes with
which the defendant was charged. ... [The Appellate
Division then continued to set forth the New Jersey
standard for determining admissibility of third-party
guilt evidence.].

As defendant points out, Yancey identified the gun
used against him as the one used against Ralph and
admitted that he first identified Bowers as his
attacker.  Thus, defendant was able to produce evidence
tending to show Bowers' guilt.  In fact, defendant was
acquitted of the charges regarding Yancey.  The jury
evidently concluded that there was at least a
reasonable doubt as to whether Bowers or defendant shot
Yancey.  Therefore, the judge's instruction to the jury
did not prejudicially affect defendant, since the jury
was not precluded from concluding that Bowers might

12

have committed either the Yancey shooting or the Ralph
murder.

     In sum, the court's unremarkable instruction to
the jury not to speculate as to Bowers provides no
basis for the reversal of defendant's murder
conviction.

(Re B, at pp. 22-24).

Under federal law, "'state and federal rulemakers have broad

latitude under the Constitution to establish rules excluding

evidence from criminal trials.'"  <u>Homes v. South Carolina</u>, 126 S.

Ct. 1727, 1731 (2006) (quoting <u>United States v. Scheffer</u>, 523

U.S. 303, 308 (1998); also citing <u>Crane v. Kentucky</u>, 476 U.S.

683, 689-690 (1986); <u>Marshall v. Lonberger</u>, 459 U.S. 422, 438, n.

6 (1983); <u>Chambers v. Mississippi</u>, 410 U.S. 284, 302-303 (1973);

<u>Spencer v. Texas</u>, 385 U.S. 554, 564 (1967)).

    This latitude, however, has limits.  "Whether rooted
directly in the Due Process Clause of the Fourteenth
Amendment or in the Compulsory Process or Confrontation
clauses of the Sixth Amendment, the Constitution
guarantees criminal defendants 'a meaningful
opportunity to present a complete defense.'"  This
right is abridged by evidence rules that "infring[e]
upon a weighty interest of the accused" and are
"'arbitrary' or 'disproportionate to the purposes they
are designed to serve.'"
     ...

    While the Constitution thus prohibits the
exclusion of defense evidence under rules that serve no
legitimate purpose or that are disproportionate to the
ends that they are asserted to promote,
well-established rules of evidence permit trial judges
to exclude evidence if its probative value is
outweighed by certain other factors such as unfair
prejudice, confusion of the issues, or potential to
mislead the jury. ...  Plainly referring to rules of
this type, we have stated that the Constitution permits

judges "to exclude evidence that is 'repetitive ...,
only marginally relevant' or poses an undue risk of
'harassment, prejudice, [or] confusion of the issues.'"

Homes v. South Carolina, 126 S. Ct. at 1731-33 (internal

citations omitted).

Violations of the right to present a defense are subject to

harmless error review.  See, e.g., Crane v. Kentucky, 476 U.S.

683 (1986); Delaware v. Van Arsdall, 475 U.S. 673, 680-84 (1986);

Savage v. District Attorney of the County of Philadelphia , 116

Fed. Appx. 332 (3d Cir. 2004) (unpubl.).

The Compulsory Process clause protects the
presentation of the defendant's case from unwarranted
interference by the government, be it in the form of an
unnecessary evidentiary rule, a prosecutor's
misconduct, or an arbitrary ruling by the trial judge.
[footnote] ...

But the right is not absolute.  The Sixth
Amendment requires more than a mere showing by the
accused that some relevant evidence was excluded from
his trial.  Rather, the accused must show how that
testimony would have been both material and favorable
to his defense. ... [E]vidence is material: "only if
there is a reasonable likelihood that the testimony
could have affected the judgment of the trier of fact."
... In [United States v. ]Bagley, [473 U.S. 667
(1985)] the Court further refined the materiality
definition by noting that, "[a] 'reasonable
probability' is a probability sufficient to undermine
confidence in the outcome."

In sum, for [a defendant] to establish that he was
convicted in violation of his Sixth Amendment right to
compulsory process, he must show: First, that he was
deprived of the opportunity to present evidence in his
favor; second, that the excluded testimony would have
been material and favorable to his defense; and third,
that the deprivation was arbitrary or disproportionate
to any legitimate evidentiary or procedural purpose.

14

Government of the Virgin Islands v. Mills, 956 F.2d 443, 445-46
(3d Cir. 1992) (footnote and internal citations omitted).  The
Court of Appeals noted that some courts analyze such claims under
the Due Process Clause and that there is little, if any,
difference in the analysis.  See Mills, 956 F.2d at 445 n.4.

In this case, Petitioner has not demonstrated any of the
three requirements set forth in Mills.  He was not deprived of
the opportunity to present evidence in his favor.  In fact, his
attorney argued vigorously that it was Bowers, not Petitioner who
committed the murder.  Second, no testimony was excluded.  While
the judge instructed the jury that the case was about Petitioner,
not Bowers, testimony regarding Yancey's identification of Bowers
was permitted and apparently played a crucial role in the jury's
acquittal of Petitioner for the Yancey crimes.  Third, there was
no deprivation to Petitioner, as he was permitted to make his
defense.  That the jury chose not to believe that he did not
murder Ralph, does not result in a constitutional violation.

As such, Petitioner has not shown, as required by 28 U.S.C.
§ 2254(d), that the actions of the state courts "resulted in a
decision that was contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined by
the Supreme Court of the United States," or "resulted in a
decision that was based on an unreasonable determination of the
facts in light of the evidence presented in the State court

15

proceeding."  Accordingly, this ground for a writ of habeas corpus will be denied.

**D.**   **Petitioner's Claims Regarding Statement (Grounds Two and Four).**

In Ground Two, Petitioner argues that prior to trial, he moved to present the expert testimony of Dr. Wulach, who testified at the <u>Miranda</u> hearing[2] that Petitioner possessed a low level of intellectual functioning and a coping deficit disorder that were factors bearing on the credibility of his statement to police.  However, the trial judge denied the request.  Thus, Petitioner argues that he was deprived of presenting his defense.  In Ground Four, Petitioner argues that the trial court erred in finding that his statement to police was voluntary despite his low intelligence.

The trial judge held a pretrial <u>Miranda</u> hearing to determine the voluntariness of Petitioner's statement to police.  The State presented testimony from the two detectives involved in taking the statement.  Petitioner presented the testimony of Dr. Wulach, a psychologist, who evaluated Petitioner and found that he had a low intelligence quotient and a coping deficit.  (Re 1T).  Then, the State presented the testimony of Dr. Fulford, who testified that Petitioner had some limitations, but had a basic

---

[2]   <u>See</u> <u>Miranda v. Arizona</u>, 381 U.S. 436 (1966).

understanding of his <u>Miranda</u> rights and was capable of waiving

his rights.  (Re 2T at pp. 3-19).

The trial judge held on the record:

. . . I find that there was no undue suggestiveness
which would have prevented the defendant from
voluntarily waiving his rights.

I find, having heard both doctors, I'm satisfied
that even though he is of limited ability and that is
an issue for each court to decide, his ability did not
prevent him from voluntarily waiving his rights as it
relates to Miranda.

(Re 3T at p. 10).  The trial judge also filed a written opinion

discussing his findings in more detail.  (Petitioner's direct

appeal brief, Appendix, at pp. 16a-18a).

The trial judge also entertained lengthy pretrial arguments

on the issue of whether or not to allow the doctor's testimony at

trial.  Petitioner's counsel argued that the doctor would not

testify as to the voluntariness of the confession, which had

already been determined at the <u>Miranda</u> hearing, but rather, that

the doctor would testify that because of Petitioner's inability

to mentally deal with issues, he was more likely to be coerced.

(Re 5T at pp. 7-8).  The trial judge noted that Petitioner's

counsel would be presenting a diminished capacity defense;

however, Petitioner's counsel argued that the testimony would not

be that Petitioner was "incapable," but rather more "vulnerable"

to coercion.  (Re 5T at p. 8).  The trial judge disagreed and

excluded the proffered evidence, stating that it could only show

a diminished capacity, finding: "It appears to me, for this
record, that the doctor would be testifying to the same substance
that he testified to in the [Miranda] hearing and that would be
whether or not it was voluntary, more than the credibility of the
statement and, as such, I'm denying his testimony for that
purpose."  (Re 7T at pp. 3-4).

The Appellate Division examined the voluntariness of
Petitioner's statement to police, and found that the statement
was voluntary.  The Appellate Division found:

> We determine the voluntariness of a statement in
> light of the totality of all of the surrounding
> circumstances.  Moreover, a defendant's waiver of his
> rights must be made with a full awareness of the nature
> of the right granted and the consequences of waiving
> it.  Thus, even a voluntary confession is inadmissible
> if the defendant failed to comprehend the
> relinquishment of his rights.
>
> We accord deference to those findings of the trial
> court which are influenced by the lower court's
> opportunity to see and hear the witnesses and develop a
> "feel" for the case.  The ultimate question of
> voluntariness, however, is one of law.
>
> After the hearing, the judge issued a written
> opinion denying defendant's motion to suppress his
> confession.  He found that defendant's interrogation
> "was properly conducted," namely, that the Miranda
> warnings were given, that defendant "knowingly and
> intelligently waived each and every one of the rights
> before making [the] statement," that he neither invoked
> nor attempted to invoke his rights, and that the
> statement was voluntarily made.
>
> We conclude that the court's decision on these
> issues should not be disturbed.  As the court noted,
> defendant's IQ was only one factor to consider in
> deciding if his statement was voluntary.  Further,
> "[s]ubnormal mentality does not ipso facto make a

18

confession involuntary." Therefore, even if defendant
was functioning at a low intellectual level, by itself
that did not mean that he could not have acted
voluntarily.

Additionally, defendant was twenty-five-years-old
at the time of the waiver and was able to read and
adequately understand the waiver rights form. He had
no psychological problem that would foreclose a
voluntary confession, he had been arrested in the past
and therefore was not in an unfamiliar situation, and
there was no evidence that any pressure of any kind,
either physical or emotional, had been imposed on him.
The interrogation, moreover, was not overly lengthy.

We are satisfied that the trial court's decision
was adequately based on substantial evidence in the
record, when looking at the totality of the
circumstances surrounding this confession. Defendant
had the mental capacity to make a knowing waiver of his
rights, and we do not disturb the judge's decision.

(Re B at pp. 11-13)(internal citations omitted).

To begin, with regard to Petitioner's claim that the

exclusion of the doctor's testimony deprived him of his right to

present a defense (Ground Two), the Court refers to the legal

standard set forth in this Opinion, Section C, supra. Under the

three prongs of Mills, Petitioner's claim must fail.

Particularly, Petitioner fails to meet the third prong of Mills,

that the deprivation of the opportunity to present the doctor's

testimony "was arbitrary or disproportionate to any legitimate

evidentiary or procedural purpose." Mills, 956 F.2d at 446. The

trial judge found that the proffered testimony would, in fact,

assert a diminished capacity defense. Thus, there was a

legitimate evidentiary and procedural purpose for denying the evidence.

Petitioner argues in his Traverse that pursuant to <u>Crane v. Kentucky</u>, 476 U.S. 683 (1986), the trial court was required to admit the doctor's testimony to trial.  In <u>Crane</u>, the trial judge denied a motion to suppress the petitioner's statement, finding the statement voluntary.  However, at trial, the trial judge denied petitioner's counsel's request to demonstrate that the circumstances of the petitioner's statement "cast doubt on its validity and its credibility."  <u>See Crane</u>, 476 U.S. at 685-86.
The Supreme Court held:

> . . . circumstances surrounding the taking of a confession can be highly relevant to two separate inquiries, one legal and one factual.  The manner in which a statement was extracted is, of course, relevant to the purely legal question of its voluntariness, a question most, but not all, States assign to the trial judge alone to resolve.  But the physical and psychological environment that yielded the confession can also be of substantial relevance to the ultimate factual issue of the defendant's guilt or innocence. Confessions, even those that have been found to be voluntary, are not conclusive of guilt.  And, as with any other part of the prosecutor's case, a confession may be shown to be "insufficiently corroborated or otherwise . . . unworthy of belief."  Indeed, stripped of the power to describe to the jury the circumstances that prompted his confession, the defendant is effectively disabled from answering the one question every rational juror needs answered: If the defendant is innocent, why did he previously admit his guilt? Accordingly, regardless of whether the defendant marshaled the same evidence earlier in support of an unsuccessful motion to suppress, and entirely independent of any question of voluntariness, a defendant's case may stand or fall on his ability to

> convince the jury that *the manner in which the confession was obtained* casts doubt on its credibility.

*Crane*, 476 U.S. at 688-89 (internal citations omitted)(emphasis added).  Further, the Supreme Court explained:

> . . . evidence about *the manner in which a confession was obtained* is often highly relevant to its reliability and credibility.  Such evidence was especially relevant in the rather peculiar circumstances of this case.  Petitioner's entire defense was that there was no physical evidence to link him to the crime and that, for a variety of reasons, his earlier admission of guilt was not to be believed.  To support that defense, he sought to paint a picture of a young, uneducated boy who was kept against his will in a small, windowless room for a protracted period of time until he confessed to every unsolved crime in the county, including the one for which he now stands convicted.  We do not, of course, pass on the strength or merits of that defense.  We do, however, think it plain that *introducing evidence of the physical circumstances that yielded the confession* was all but indispensable to any chance of its succeeding.  Especially since [neither the state courts or respondent] advanced any rational justification for the wholesale exclusion of this body of potentially exculpatory evidence, the decision below must be reversed.

*Crane*, 476 U.S. at 691 (emphasis added).

Petitioner argues in his Traverse that although *Crane* dealt with the physical and psychological environment that yielded the confession, the case should not be read so narrowly as to exclude a defendant's education and intelligence as a circumstance bearing upon the question of voluntariness and credibility.  He also argues that any error was not "harmless" because the confession was the most damaging piece of evidence presented.

21

The standard for habeas review in this Court is whether the state court's action in excluding the testimony was "contrary to" or "an unreasonable application" of clearly established federal law.  Because Crane deals with the physical environment yielding a confession, it is distinguishable from the present case, and it cannot be said that the state court's actions were an "unreasonable application" of Crane.

Further, under a "harmless error" analysis, while Petitioner may or may not be correct in his assessment that the most damaging piece of evidence against him was his confession, other damaging evidence was also presented by the State, including eyewitness testimony, physical evidence concerning the weapon used in the offense, bullets found, and fingerprints discovered on the weapon.  Thus, even if the state court's ruling was erroneous under Crane, which this Court does not find, such error would be rendered harmless in light of the other evidence against Petitioner.

Additionally, Petitioner's allegation that the trial judge erred in finding that the statement was voluntary (Ground Four) lacks merit.  The state courts invoked the correct law, held a hearing pursuant to Miranda, and reasonably determined the facts in light of the evidence presented.

Thus, Petitioner has not demonstrated that the actions of the state courts "resulted in a decision that was contrary to, or

involved an unreasonable application of, clearly established
Federal law, as determined by the Supreme Court of the United
States," or "resulted in a decision that was based on an
unreasonable determination of the facts in light of the evidence
presented in the State court proceeding."  Accordingly, these
grounds for a writ of habeas corpus will be denied.

**E.    Petitioner's Claim Regarding Right of Confrontation (Ground Three).**

Petitioner argues in Ground Three that the state's
investigator testified that he had received confidential
information, in violation of the state's agreement prior to trial
that its witnesses would not testify that confidential informants
led police to Petitioner.  Petitioner argues that this violated
his right to confrontation and was inadmissible hearsay, and
violated the Bankston rule under New Jersey law.[3]

A review of the record demonstrates that at trial, a
detective testified on direct examination, without objection,
that he had an investigative lead for "Jihad" which led him to
suspect Petitioner in the crimes.  Petitioner's counsel
vigorously cross-examined the detective to show that the
investigation of Petitioner was inadequate, arbitrary, and
misdirected, and to show that the detectives were not
investigating others involved in the crimes.  Thus, on redirect,

---

[3]  State v. Bankston, 63 N.J. 263 (1973).

23

the State elicited all investigative steps that the detective took to counter Petitioner's assertions of an inadequate investigation.  On summation, Petitioner's counsel argued that other individuals were involved in the crimes but were not prosecuted.

As the Appellate Division explained:

Defendant further claims that his murder conviction must be reversed because a witness for the State violated the principles explained in <u>Bankston</u> . . . .  Our Supreme Court restated in <u>Bankston</u> the rule that a defendant's constitutional right of confrontation is not violated when a police officer explains his reasons for apprehending a suspect, or for going to the scene of a crime, if he states that he did so "upon information received."  Once more than that is offered, the right begins to be threatened.

We have explained that "[t]he principle to be distilled from <u>Bankston</u> and its progeny is that testimony relating inculpatory information supplied by a co-defendant or other non-testifying witness identifying the defendant as the perpetrator of a crime deprives the accused of his or her constitutional rights."

But such testimony is admissible to show that the officer was not acting in an arbitrary manner or to explain his subsequent conduct.  Thus, such evidence can be admitted to rebut a claim that police acted arbitrarily in focusing on a particular suspect.

* * *

The testimony in issue here was offered to rebut the suggestion inherent in defendant's cross-examination that the State's investigation was shoddy because police focused only on defendant rather than on other possible suspects.  Thus, the testimony was not offered to prove that defendant was guilty of the crimes charged, but rather was offered to explain how and why the officer's investigation led him to conclude that defendant was the main suspect.

24

(Re B at pp. 24-26)(internal citations omitted).

Under federal law, the Sixth Amendment's Confrontation Clause provides that, "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." Recently, the Supreme Court has traced the historical roots of the Confrontation Clause and has distinguished the application of the Confrontation Clause to different types of hearsay evidence. See generally Crawford v. Washington, 541 U.S. 36 (2004). In Crawford, the Supreme Court stated:

> Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law -- as does [Ohio v. ]Roberts, [448 U.S. 56, 66 (1980),] and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether. Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination. We leave for another day any effort to spell out a comprehensive definition of "testimonial." Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed.

Crawford, 541 U.S. at 68 (footnote omitted).[4]

_____

[4] In Ohio v. Roberts, 448 U.S. 56, 66 (1980), the Supreme Court held that the Confrontation Clause does not preclude the admission of an unavailable witness's hearsay statement if it bears "adequate indicia of reliability." Under Roberts, a hearsay statement contains such "adequate indicia of reliability" if it falls within a "firmly rooted hearsay exception" or if it bears "particularized guarantees of trustworthiness." 448 U.S. at 66.

See also Davis v. Washington, 126 S. Ct. 2266 (2006) (statements taken by police in the course of an interrogation are "nontestimonial," and are not subject to the Confrontation Clause, when they are made under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency; statements taken by police in the course of interrogation are "testimonial," and subject to the Confrontation Clause, when the circumstances objectively indicate that there is no ongoing emergency and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution). The Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." Crawford, 541 U.S. at 59 n.9 (citing Tennessee v. Street, 471 U.S. 409 (1985)). Confrontation Clause errors are subject to harmless error analysis. See United States v. Reynolds, 171 Fed. Appx. 961, 966, 2006 WL 760291, *4 (3d Cir. 2006) (citing Delaware v. VanArsdall, 475 U.S. 673, 684; United States v. Al-Sadawi, 432 F.3d 419, 426 (2d Cir. 2005)). See also United States v. Arriola-Perez, 137 Fed. Appx. 119, 133, 2005 WL 1463502, *11 (10th Cir. 2005).

Prior to the Crawford opinion, the Court of Appeals for the Third Circuit had held that, under certain circumstances, police officers may reveal information received out-of-court for the

limited purpose of establishing background or context for the
officers' actions.  See United States v. Sallins, 993 F.2d 344
(3d Cir. 1993).  At the same time, the Court noted the potential
for abuse.

> "In criminal cases, an arresting or investigating
> officer should not be put in the false position of
> seeming just to have happened upon the scene; he should
> be allowed some explanation of his presence and
> conduct.  His testimony that he acted 'upon
> information received,' or words to that effect, should
> be sufficient.  However, cases abound in which the
> officer is allowed to relate historical aspects of the
> case, replete with hearsay statements in the form of
> complaints and reports, on the ground that he was
> entitled to give the information upon which he acted.
> The need for the evidence is slight, the likelihood of
> misuse great."

Sallins, 993 F.2d at 346 (quoting 2 McCormick on Evidence § 249,
at 104 (4th ed. 1992)).  See also United States v. Lopez, 340
F.3d 169 (3d Cir. 2003) (again recommending the use of "general
terms" to provide background for police activities); United
States v. Price, 2006 WL 2337255 (3d Cir. June 30, 2006) ("Police
officers are permitted under Sallins to explain the background
context for their arrival at a scene.  When the explanation
cannot be effected without relating some contents of the
information received, Sallins does not prohibit admission of such
details.").

Here, it appears that any information tying Petitioner to
the crimes would have come into the possession of the police as a
result of investigation.  Thus, any such statements must be

27

considered "testimonial."  Even applying <u>Crawford</u> to Petitioner's case, however, Petitioner is not entitled to relief.  The testimony by police did not go beyond a background explanation for the reason they investigated Petitioner and was in response to cross-examination.  The officer's testimony did not reveal any incriminating statements.  There was no violation of the Confrontation Clause.  To the extent the testimony did violate the Confrontation Clause, any error was harmless beyond a reasonable doubt due to the overwhelming evidence presented against Petitioner.

Thus, the Appellate Division decision was neither contrary to nor an unreasonable application of clearly established federal law.  Petitioner is not entitled to relief on this claim.

**F.  Petitioner's Claim Regarding Admission of Photographic Evidence (Ground Five).**

In Ground Five, Petitioner argues that the trial judge erred in admitting a photographic identification into evidence at trial, where the court had denied Petitioner's request for a full <u>Wade</u>[5] hearing regarding that evidence.  The Appellate Division found that, "defendant's contentions as to there having been an improper identification procedure are without basis in the record.  Defendant was not entitled to a full <u>Wade</u> hearing

---

[5]  <u>United States v. Wade</u>, 388 U.S. 218 (1967).

because he produced no evidence of impermissible suggestiveness."
(Re B at p. 22).

It is well-established that the violation of a right created
by state law is not cognizable as a basis for federal habeas
relief.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("We
have stated many times that 'federal habeas corpus relief does
not lie for errors of state law.'" (quoting Lewis v. Jeffers, 497
U.S. 764, 680 (1990))).  Accordingly, Petitioner cannot obtain
relief for any errors in state law evidentiary rulings, unless
they rise to the level of a deprivation of due process.
Estelle, 502 U.S. at 70 ("'the Due Process Clause guarantees
fundamental elements of fairness in a criminal trial '") (quoting
Spencer v. Texas, 385 U.S. 554, 563-64 (1967)).

For a habeas petitioner to prevail on a claim that an
evidentiary error amounted to a deprivation of due process, he
must show that the error was so pervasive as to have denied him a
fundamentally fair trial.  See Keller v. Larkins, 251 F.3d 408,
413 (3d Cir.), cert. denied, 534 U.S. 973 (2001).

In this case, Petitioner has not demonstrated that his trial
was fundamentally unfair due to the admission of the photographic
evidence.  The evidence against Petitioner was overwhelming, and
included eyewitness identification and testimony, physical
evidence of Petitioner's partial thumb print on the gun that was

used to shoot the victim, and Petitioner's admission to police in the crimes.

Thus, Petitioner has not shown, as required by 28 U.S.C. § 2254(d), that the actions of the state courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Accordingly, this ground for a writ of habeas corpus will be denied.

## F.  **Petitioner's Claims Regarding Sentencing (Ground Six).**

In Ground Six, Petitioner argues that his sentence violates Blakely v. Washington, 542 U.S. 296 (2004).

In Apprendi v. New Jersey, 530 U.S. 466, 471, 490 (2000), the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  In Blakely, the Supreme Court overturned a sentence imposed under Washington state's sentencing system, explaining that "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings."  542 U.S. at 303-04.

The rules announced in Apprendi and Blakely, however, are not applicable retroactively to cases on collateral review.  See generally In re Olopade, 403 F.3d 159 (3d Cir. 2005) (finding that the decision of the Supreme Court in United States v. Booker, 543 U.S. 220 (2005), does not apply retroactively to cases on collateral review); United States v. Swinton, 333 F.3d 481 (3d Cir.), cert. denied, 540 U.S. 977 (2003) (holding that Apprendi v. New Jersey, 503 U.S. 466 (2000), does not apply retroactively to cases on collateral review); In re Turner, 267 F.3d 225 (3d Cir. 2001) (holding that Apprendi does not apply retroactively to cases on collateral review).  See also United States v. Price, 400 F.3d 844, 849 (10th Cir.), cert. denied, 126 S.Ct. 731 (2005) (Blakely does not apply retroactively to cases on collateral review).

In any event, it does not appear that the trial court violated the rule of Apprendi/Blakely.  The Supreme Court of New Jersey has held that there is no presumptive term for murder, but that "the standard range for murder is a sentence between thirty years and life imprisonment." State v. Abdullah, 184 N.J. 497, 507 (2005).  In this case, Petitioner was sentenced to a life term for murder.  In addition, under state law, "there is no presumption in favor of concurrent sentences and therefore the maximum potential sentence authorized by the jury verdict is the

31

aggregate of sentences for multiple convictions." <u>Abdullah</u>, 184 N.J. at 513-14 (citation omitted).

The Supreme Court has held that judicial factfinding in support of a sentencing judge's discretion to sentence within a statutory range does not violate the Constitution. <u>See</u> <u>Booker</u>, 543 U.S. at 233; <u>Blakely</u>, 542 U.S. at 308-09. Further, Petitioner's sentences for the robberies, which were greater than the presumptive term, do not violate state law, because the sentences were based on three aggravating factors that are "inextricably linked to the recidivism exception" of <u>Blakely</u>, and thus could be found by a judge. <u>See</u> <u>Abdullah</u>, 184 N.J. at 506, n.2.

Thus, Petitioner has not shown, as required by 28 U.S.C. § 2254(d), that the actions of the state courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Accordingly, this ground for a writ of habeas corpus will be denied.

## CONCLUSION

For the foregoing reasons, the Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254 is denied. The Court

32

further finds that no certificate of appealability will issue because Petitioner has not made a substantial showing of the denial of a constitutional right, as required by 28 U.S.C. § 2253.

An appropriate Order accompanies this Opinion.

Dated: December 4, 2006

                                    /s/ Jose L. Linares
                                    United States District Judge